# Exhibit A

January 9, 2020

U.S. Department of Homeland Security
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
245 Murray Lane, SW, Stop 0655
Washington, D.C. 20528-0655

U.S. Customs and Border Protection
FOIA Officer
90 K Street, NE
FOIA Division
Washington, D.C. 20229

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009

Transportation Security Administration
Freedom of Information Act Branch
601 S. 12th Street
3rd Floor, West Tower, TSA-20
Arlington, VA 20598-6020

**Re:   FOIA Request Concerning Use of Facial Recognition Technology**

To Whom It May Concern:

  The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act request (the "Request"). The Request seeks records pertaining to the use of facial recognition technology at airports and at the border by the Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and the Transportation Security Administration ("TSA").

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

1

# I. Background

Over the past few years, CBP and the TSA have dramatically expanded their use of face surveillance technology at airports and the border.[2] This technology poses grave risks to privacy and civil liberties, especially given its discriminatory impacts and the potential for further expansion and misuse.[3]

In 2017, CBP began a program called the Traveler Verification Service ("TVS"), which operates as a "facial image matching service" that compares photos taken during entry or exit from the United States with images from "DHS holdings."[4] As of June 2019, CBP had processed more than 20 million travelers using facial recognition.[5]

Since the start of TVS in 2017, CBP has partnered with numerous private stakeholders in its facial recognition initiatives, including major airlines.[6] As of August 2019, 26 airlines and airports have committed to employing CBP's face-matching technology.[7] Indeed, several major airlines in the United States have already incorporated this technology into boarding procedures for international flights leaving the country. Delta Airlines, for example, announced the opening of its first biometric terminal in the country



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[2] *See* Christopher Reynolds, *At Some Airports, Your Face Is Your ID. But Does That Put Your Privacy at Risk?*, L.A. Times, Aug. 23, 2019, https://www.latimes.com/travel/story/2019-08-22/facial-recognition-biometrics-at-airports-proliferating; Geoffrey A. Fowler, *Don't Smile for Surveillance: Why Airport Face Scans Are a Privacy Trap*, Wash. Post, June 10, 2019, https://www.washingtonpost.com/technology/2019/06/10/your-face-is-now-your-boarding-pass-thats-problem; Kate O'Flaherty, *Facial Recognition at U.S. Airports. Should You Be Concerned?*, Forbes, Mar. 11, 2019, https://www.forbes.com/sites/kateoflahertyuk/2019/03/11/facial-recognition-to-be-deployed-at-top-20-us-airports-should-you-be-concerned.

[3] Catie Edmondson, *An Airline Scans Your Face. You Take Off. But Few Rules Govern Where Your Data Goes*, N.Y. Times, Aug. 6, 2018, https://www.nytimes.com/2018/08/06/us/politics/facial-recognition-airports-privacy.html; Jay Stanley, *What's Wrong with Airport Face Recognition*, ACLU (Aug. 4, 2017), https://www.aclu.org/blog/privacy-technology/surveillance-technologies/whats-wrong-airport-face-recognition.

[4] DHS, *TSA and CBP: Deployment of Biometric Technologies, Report to Congress* at 3, *available at* https://www.tsa.gov/sites/default/files/biometricsreport.pdf.

[5] *Id.* at 4–5.

[6] *See* Lee Fang & Ali Winston, *Private Companies Look to Cash in as Homeland Security Brings Facial Recognition to U.S. Borders*, Intercept, Nov. 29, 2017, https://theintercept.com/2017/11/29/facial-recognition-homeland-security-borders.

[7] DHS, *supra* note 4, at 5.

2

in Atlanta. United Airlines, American Airlines, and JetBlue Airways have also commenced pilot programs on specified routes.[8]

Separately, the TSA has outlined a sweeping plan to implement face surveillance for both international and domestic travelers.[9] After partnering with CBP on facial recognition for international travelers, the TSA intends to operationalize this technology for TSA pre-check travelers, and ultimately to expand "biometric solutions" to domestic travelers more broadly.[10] The agency's implementation of this plan is already underway. In 2017, the TSA began working with CBP on the use of facial recognition for international travelers at TSA security checkpoints.[11] In 2018, the agency began collecting facial images (in addition to fingerprints) from individuals enrolling in TSA pre-check.[12] And in 2019, the TSA launched its fourth iteration of facial recognition testing at McCarran International Airport in Las Vegas.[13] The TSA has explained that, in its exploration of biometric matching technologies, it will focus on facial recognition "as the primary means of identity verification for aviation security screening."[14]

These developments raise profound civil liberties concerns. Unlike other forms of identity verification, facial recognition technology can facilitate undetectable, persistent government surveillance on a massive scale. Moreover, several studies have shown that facial recognition technology results in a higher rate of false identifications for people of color. For example, a December 2019 report by the National Institute of Standards and



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[8] David Oliver, *Facial Recognition Scanners Are Already at Some Airports: Here's What to Know,* USA Today, Aug. 16, 2019, https://www.usatoday.com/story/travel/airline-news/2019/08/16/biometric-airport-screening-facial-recognition-everything-you-need-know/1998749001.

[9] DHS, *supra* note 4, at 7–10.

[10] *Id.* at 9.

[11] *Id.* at 6.

[12] *Id.* at 7–8.

[13] Orion Rummler, *TSA Launches New Facial Recognition Test in Vegas Airport*, Axios, Aug. 29, 2019, https://www.axios.com/tsa-launches-4th-round-of-facial-recognition-testing-in-airports-bf3efd74-6d56-49c6-bc5a-c04df5e4e400.html; *see also* Davey Alba, *The US Government Will Be Scanning Your Face at 20 Top Airports, Documents Show*, BuzzFeed News, Mar. 11, 2019, https://www.buzzfeednews.com/article/daveyalba/these-documents-reveal-the-governments-detailed-plan-for.

[14] DHS, Privacy Impact Assessment for the Travel Document Checker Automation Using Facial Recognition at 1–2, DHS/CBP/PIA-046(a) (Nov. 2018), *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-tsa-046-tdcautomationusingfacialrecognition-august2019.pdf.

3

Technology found a higher rate of incorrect facial matches for photos of Black and Asian people, relative to white people.[15]

Although Congress has authorized DHS to collect biometrics from noncitizens entering or exiting the United States, it has not authorized the collection of biometrics from U.S. citizens. However, DHS recently published a document in its unified agenda indicating its intention to pursue rulemaking to require mandatory facial recognition for all travelers, including U.S. citizens leaving or returning to the United States.[16] Shortly thereafter, following a public outcry from civil liberties organizations, CBP announced that it was no longer seeking the change and "intends to have the planned regulatory action regarding U.S. citizens removed from the unified agenda next time it is published."[17] The full set of reasons for this reversal remain unclear, and CBP has left open the possibility that it will seek to require U.S. citizens to provide photographs upon entering or leaving the United States in the future.

The ACLU is concerned about the civil rights and civil liberties implications of the federal government's use of face recognition to identify and surveil individuals. As this technology continues to be implemented, it threatens to grant the government an unprecedented power to pervasively track people's movements and associations in ways that threaten core constitutional values.

The ACLU submits this FOIA request to provide the public with information about the government's facial recognition initiatives, including information about the airline partnership agreements and policies governing the use of facial recognition.



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[15] Curtis Tate, *Racial Bias in Facial Recognition Software: What Travelers Should Know as TSA, CBP Expand Programs*, USA Today, Dec. 30, 2019, https://www.usatoday.com/story/travel/news/2019/12/30/facial-recognition-racial-bias-traveler-info-tsa-cbp-expand-use/2755613001.

[16] Zack Whittaker, *DHS Wants to Expand Airport Face Recognition to Include US Citizens*, Tech Crunch, Dec. 2, 2019, https://techcrunch.com/2019/12/02/homeland-security-face-recognition-airport-citizens.

[17] Lori Aratani, *DHS Withdraws Proposal to Require Airport Facial Scans for U.S. Citizens*, Wash. Post, Dec. 5, 2019, https://www.washingtonpost.com/local/trafficandcommuting/dhs-withdraws-proposal-to-require-airport-facial-scans-for-us-citizens/2019/12/05/0bde63ae-1788-11ea-8406-df3c54b3253e_story.html; *see also* Rachel Metz, *Homeland Security Drops Plan to Use Facial Recognition on Traveling US Citizens*, CNN Business, Dec. 5, 2019, https://www.cnn.com/2019/12/02/tech/homeland-security-facial-recognition-citizens-at-airports/index.html; Zack Whittaker, *After Criticism, Homeland Security Drops Plans to Expand Airport Face Recognition Scans to US Citizens*, Dec. 5, 2019, https://techcrunch.com/2019/12/05/homeland-security-drops-airport-citizens-face-scans.

4

## II. Requested Records

The ACLU requests the following records created on or after January 1, 2017:

**Records requested from DHS and CBP**

1. All memoranda of understanding, information-sharing agreements, business requirements, contracts, letters of commitment, and other agreements with airlines, airports, other countries, or other U.S. federal, state, or local authorities, concerning any aspect of TVS, including the processing or receipt of data collected or generated through TVS.

2. All policies, procedures, guidelines, formal or informal guidance, advisories, directives, and memoranda concerning:

   a. The acquisition, processing, retention, or dissemination of data collected or generated through TVS, including biometric templates;[18]

   b. Access by airlines, airports, cruise lines, seaports, commercial vendors, other countries, or other U.S. federal, state, or local authorities to data collected or generated through TVS, including biometric templates;

   c. Retention or dissemination by airlines, airports, cruise lines, seaports, commercial vendors, other countries, or other U.S. federal, state, or local authorities of data collected or generated through TVS, including biometric templates.

3. All memoranda, briefing materials, advisories, presentations, or formal or informal guidance related to the December 5, 2019 announcement that "There are no current plans to require U.S. citizens to provide photographs upon entry and exit from the United States," and that "CBP intends to have the planned regulatory action regarding U.S. citizens removed from the unified agenda next time it is published."[19]

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[18] DHS, Privacy Impact Assessment for the Traveler Verification Service, DHS/CBP/PIA-056 (Nov. 2018) at 6, 26, *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp030-tvs-november2018_2.pdf (explaining that CBP "creates biometric templates of each of the historical photos, as well as the newly-captured exit photos").

[19] Lori Aratani, *DHS Withdraws Proposal to Require Airport Facial Scans for U.S. Citizens*, Wash. Post, Dec. 5, 2019, https://www.washingtonpost.com/local/trafficandcommuting/dhs-withdraws-proposal-to-require-airport-facial-scans-for-us-citizens/2019/12/05/0bde63ae-1788-11ea-8406-df3c54b3253e_story.html.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

4. All records, excluding informal email correspondence, concerning the efficacy or efficiency of facial recognition technology, as compared to other biometric and/or biographic methods, for identifying visa overstays, reporting visa overstays by country, or identifying individuals using fraudulent travel documents.

5. Statistics created on or after November 1, 2018, concerning "facial comparison matching performance," including valid matches, invalid matches, valid non-matches, invalid non-matches, consequences for individuals identified as non-matches, and the aforementioned data broken down by demographics including race, ethnicity, skin pigmentation, gender, age, and/or country of origin.[20]

6. "Summary reports" that "present the actual performance of TVS against its [Biometric Air Exit Key Performance Parameters] in production."[21]

7. All final evaluations, tests, audits, analyses, studies, or assessments by the DHS Science and Technology Directorate, DHS Office of Biometric Identity Management, or the National Institute of Standards and Technology, in connection with CBP, related to (i) the performance of algorithms in matching facial photographs, and/or (ii) the performance of facial recognition technologies developed by vendors. This request encompasses records concerning whether the algorithms or technologies perform differently based on flight route or an individual's race, ethnicity, skin pigmentation, gender, age, and/or country of origin.[22]

8. All records, excluding informal email correspondence, concerning CBP's implementation of recommendations by the DHS Science and Technology Directorate to conduct an analysis of the risk of "false matches based on the demographics (age, country of origin, gender) of travelers on individual flights."[23]

9. All final reports, memoranda, or budgets concerning the cost of implementation of facial recognition technology or TVS as part of entry and exit procedures.

---

[20] DHS, *supra* note 4, at 29.

[21] *Id*.

[22] *See* DHS, *supra* note 18, at 16, for a discussion of studies by the DHS Science and Technology Directorate, DHS Office of Biometric Identity Management, and the National Institute of Standards and Technology.

[23] DHS, *supra* note 4, at 33.

6

10. All records, excluding informal email correspondence, concerning future interoperability between the TSA's biometric capabilities and "mission partner systems," including CBP and DHS Office of Biometric Identity Management systems.[24]

11. All policies, memoranda, formal or informal guidance, training materials, or briefing materials concerning the purported legal basis for CBP to possess data on the TSA's behalf in the course of a traveler identity verification process.

12. All memoranda, briefing materials, advisories, presentations, formal or informal guidance, or analysis concerning whether airline or airport involvement in TVS complies with Illinois's Biometric Information Privacy Act.

**Records requested from the TSA**

1. All policies, procedures, guidelines, formal or informal guidance, advisories, directives, and memoranda concerning:

    a. The acquisition, processing, retention, or dissemination of data collected or generated through CBP's biometric services and infrastructure, including biometric templates;[25]

    b. Access by airlines, airports, cruise lines, seaports, commercial vendors, other countries, or other U.S. federal, state, or local authorities to data collected or generated through CBP's biometric services and infrastructure, including biometric templates;

    c. Retention or dissemination by airlines, airports, cruise lines, seaports, commercial vendors, other countries, or other U.S. federal, state, or local authorities of data collected or generated through CBP's biometric services and infrastructure, including biometric templates.

2. All final evaluations, tests, audits, analyses, studies, or assessments by the DHS Science and Technology Directorate, DHS Office of

---

[24] TSA, TSA Biometrics Roadmap for Aviation Security & the Passenger Experience (Sept. 2018) at 19, *available at* https://www.tsa.gov/sites/default/files/tsa_biometrics_roadmap.pdf; DHS, *supra* note 4, at 6 ("CBP and TSA will explore data-sharing and integration between biometric and traveler vetting systems.").

[25] DHS, *supra* note 18, at 6, 26 (explaining that CBP "creates biometric templates of each of the historical photos, as well as the newly-captured exit photos").

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

    Biometric Identity Management, or the National Institute of Standards and Technology related to (i) the performance of algorithms in matching facial photographs, and/or (ii) the performance of facial recognition technologies developed by vendors. This request encompasses records concerning whether the algorithms or technologies perform differently based on flight route or an individual's race, ethnicity, skin pigmentation, gender, age, and/or country of origin.[26]

3. All records, excluding informal email correspondence, concerning future interoperability between the TSA's biometric capabilities and "mission partner systems," including CBP and DHS Office of Biometric Identity Management systems.[27]

4. All policies, procedures, guidelines, formal or informal guidance, advisories, directives, and memoranda concerning requests by other federal agencies (including but not limited to the FBI, the DEA, the CIA, and the U.S. Marshals) for TSA assistance in locating or identifying individuals, and all requests by federal agencies for TSA cooperation in designing systems to facilitate information-sharing.

5. All records, excluding informal email correspondence, concerning the TSA's plans to "complement the capabilities" of Credential Authentication Technology through the implementation of TVS or facial recognition technology with respect to domestic travelers.[28]

6. All records, excluding informal email correspondence, concerning whether implementation of biometric technologies would result in operational efficiencies, including whether, at certain airport facilities, "the throughput of the checkpoint may be largely unaffected" by biometric technology because "a faster [travel document checker] process would merely shift traveler volume from the queue into the screening lane."[29]

**ACLU**
AMERICAN CIVIL LIBERTIES UNION

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[26] *See id.* at 16, for a discussion of studies by the DHS Science and Technology Directorate, DHS Office of Biometric Identity Management, and the National Institute of Standards and Technology.

[27] TSA, TSA Biometrics Roadmap for Aviation Security & the Passenger Experience (Sept. 2018) at 19, *available at* https://www.tsa.gov/sites/default/files/tsa_biometrics_roadmap.pdf.

[28] DHS, *supra* note 4, at 7.

[29] *Id.* at 15–16.

8

**Records requested from ICE**

1. All policies, procedures, guidelines, formal or informal guidance, advisories, directives, and memoranda concerning the acquisition, processing, retention, or dissemination of data collected or generated through CBP's biometric services and infrastructure, including biometric templates.[30]

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[31] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by organizations primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A. *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. *See id.*[32] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[33]



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[30] DHS, *supra* note 18, at 6, 26 (explaining that CBP "creates biometric templates of each of the historical photos, as well as the newly-captured exit photos").

[31] *See also* 6 C.F.R. § 5.5(e).

[32] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[33] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v.*

9

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to 850,000 people. The ACLU also publishes regular updates and alerts via email to 3.9 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to 4.8 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[34] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[35]

---



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

*Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[34] Press Release, ACLU, Federal Court Rules Gov't Cannot Unilaterally Detain U.S. Resident Indefinitely (Dec. 13, 2019), https://www.aclu.org/press-releases/federal-court-rules-government-cannot-unilaterally-detain-us-resident-indefinitely; Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban. Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit.

[35] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press, Jan. 18, 2017, https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi).

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[36] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its frequently visited website, https://www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[37]



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[36] *See, e.g.*, ACLU, Bad Trip: Debunking the TSA's 'Behavior Detection' Program (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative (2016), https://www.aclu.org/ report/leaving-girls-behind; Nathan Freed Wessler, ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, FBI Documents Reveal New Information on Baltimore Surveillance Flights (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[37] *See, e.g.*, *ACLU v. ODNI—*FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/

The ACLU website includes many features on information obtained through the FOIA. For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[38] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[39]

The records requested are not sought for commercial use and the ACLU plans to analyze, publish, and disseminate the information disclosed as a result of this Request to the public at no cost.



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingrayfoia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

[38] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[39] Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf; Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf; Statistics on NSL's Produced by Department of Defense, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

B.   *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[40] Specifically, the requested records relate to CBP's and the TSA's establishment of face surveillance programs—programs that have already affected more than 20 million individuals. As discussed in Part I, *supra*, facial recognition of travelers is the subject of significant public controversy and media attention.[41] The media has shown extraordinary interest in whether and how CBP and TSA biometric programs have expanded. Because CBP and the TSA are currently considering how to implement facial recognition technology more broadly, but are doing so without sufficient transparency, the public and the press lack adequate information to engage in debate and oversight. The requested records should be released now, before CBP and the TSA reach additional decisions about the expansion of facial recognition, to allow informed public debate while it may still have an impact.

Given the foregoing, ACLU has satisfied the requirements for expedited processing of this Request.

### IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[42] The ACLU also requests a waiver of search fees on the grounds that each organization qualifies as a "representative of the news media" and neither organization seeks the records for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[40] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[41] *See supra* notes 2, 6, 8, 13, 15, 16, 17; *see also* Ron Nixon, *Facial Scans at U.S. Airports Violate Americans' Privacy Report Says*, N.Y. Times, Dec. 21, 2017, https://www.nytimes.com/2017/12/21/us/politics/facial-scans-airports-security-privacy.html; Brian Naylor, *Facial Scanning Now Arriving at U.S. Airports*, NPR Politics, Mar. 16, 2018, https://www.npr.org/2018/03/16/593989347/facial-scanning-now-arriving-at-u-s-airports; *Orlando International Airport to Scan Faces of U.S. Citizens, Raising Privacy Concerns*, CBS News, June 21, 2018, https://www.cbsnews.com/news/orlando-international-airport-to-scan-faces-of-u-s-citizens-alarming-some-privacy-advocates-2018-06-21/; Harrison Rudolph, *DHS Is Starting to Scan Americans' Faces Before They Get on International Flights*, Slate, June 21, 2018, https://slate.com/technology/2017/06/dhss-biometric-exit-program-is-starting-to-scan-americans-faces-before-they-get-on-international-flights.html.

[42] *See also* 6 C.F.R. § 5.11(k)(1).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

A.   *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, media accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of matters of profound public importance, namely, the government's operation of facial recognition on the traveling public; CBP's partnerships with airlines and other private entities to implement this technology; the policies and procedures governing the acquisition, processing, retention, and dissemination of this sensitive data; and the cost, effectiveness, and discriminatory impacts of the government's facial recognition technology. Because so little specific information is publicly available concerning these issues, the records sought are critical to understanding of the implications of the government's use of facial recognition on the traveling public.

The ACLU is not filing this Request to further its respective commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be made available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.   *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the basis that the ACLU qualifies as a "representative of the news media" and does not seek the records for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[43] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[44]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the

---

[43] *See also* 6 C.F.R. § 5.11(k)(2)(iii).

[44] *See also* 6 C.F.R. § 5.11(b)(6).

14



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU therefore is a "representative of the news media" for the same reasons that it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," to be a news media requester).[45] On account of these factors, feeds associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[46] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[45] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; see also *Leadership Conference on Human Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[46] In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, In April 2017, the CIA and the Department of State granted fee waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In May 2016, the FBI granted a fee waiver request regarding a FOIA request issued to the DOJ for documents related to Countering Violent Extremism Programs. In April 2013, the National Security Division of the DOJ granted a fee waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT

\*   \*   \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all denials by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Ashley Gorski
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: 212-549-2500
agorski@aclu.org
nspfoia@aclu.org

We affirm that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Sincerely,



Ashley Gorski
Patrick Toomey
Nathan Freed Wessler
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 212-549-2500
agorski@aclu.org
nspfoia@aclu.org

**ACLU**
AMERICAN CIVIL LIBERTIES UNION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists.

16